UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ZHEN RUN SITU and ANDY CHEN,<br><br>**Plaintiffs,**<br><br>LAN GARDEN RESTAURANT AND BAR INC., doing business as LAN GARDEN 88, JOHN NG, and MICHELLE CHAN,<br><br>**Defendants.** | Civil Action No. 17-8091 (CLW)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

**CATHY L. WALDOR, U.S.M.J.**

Plaintiffs Andy Chen and Zhen Run Situ brought this action against Lan Garden Restaurant and Bar Inc. ("Lan Garden"), John Ng, and Michelle Chan, asserting claims under both the Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL"). (*Generally* Compl., ECF No. 1). The parties consented to the undersigned's jurisdiction for this matter, (ECF No. 27), and the undersigned held a bench trial on May 16, 2023, and August 2, 2023. (ECF Nos. 65, 66). The Court now issues the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

    **I.**    **RELEVANT PROCEDURAL HISTORY**

Plaintiffs commenced this matter as a putative class action on October 10, 2017, alleging that Defendants violated both the FLSA and the NJWHL by failing to pay overtime wages (both plaintiffs – Counts I and II), failing to pay all wages owed (Plaintiff Chen – Count III), and failing to pay the applicable minimum wage (Plaintiff Chen – Counts IV and V). (*Generally* Compl., ECF No. 1). While all Defendants were originally represented by the Law Offices of Michael K. Chong, LLC, defense counsel moved to withdraw, citing a nonpayment of fees and a breakdown

in the attorney-client relationship. (Aff. Of Michael K. Chong, Esq., ¶¶ 2-10, ECF No. 10-1). The Court granted that relief by Order dated March 27, 2018, giving Defendants several months to find replacement counsel. (ECF No. 14). They did not. Defendants John Ng and Michelle Chan ultimately elected to proceed *pro se*. As Defendant Lan Garden could not litigate this matter without counsel, and at the Court's explicit direction, (Jan. 15, 2019 Order, ECF No. 25), Plaintiffs requested that the Clerk of the Court place that entity in default. (ECF No. 28). The Clerk granted that relief and placed Lan Garden in default on January 31, 2019. Plaintiffs never filed a motion seeking a default judgment against Lan Garden. Nor did Plaintiffs ever seek certification of the putative class outlined in their Complaint.

On January 16, 2019, the parties consented to Magistrate Judge jurisdiction for all remaining proceedings, and the Hon. Susan D. Wigenton, U.S.M.J. entered an order referring the case to the undersigned the following day. (ECF No. 27). The undersigned conducted a bench trial on May 16, 2023, and August 2, 2023, during which Plaintiffs Chen and Situ and Defendant Ng testified. (*Generally* Trial Trs., ECF Nos. 65, 66). The Court then directed the parties to file post-trial submissions, which they did on or about September 8, 2023 (Plaintiffs), (ECF Nos. 67-68) and October 9, 2023 (Defendants Ng and Chan) (*pro se* defendants sent their submission directly to chambers via e-mail).

## II. FINDINGS OF FACT

### a. Generally Applicable Facts

During the time periods at issue in this case, Defendant Lan Garden operated a restaurant called "Lan Garden 88" on Route 46 in Ridgefield, New Jersey. (Tr. of May 16, 2023 Trial at 9:1810-5, ECF No. 66). Defendants John Ng and Michelle Chan owned Lan Garden. (*Id.* at 10:16-22; 16:5-10). Managerial personnel (front-end manager for wait staff and supervisory chef

2

for kitchen staff) were responsible for tracking employees' attendance as the restaurant did not have a punch-card system or similar system to record employee time. (Tr. of Aug. 2, 2023 Trial at 91:10-15; 96:2-97:16, ECF No. 66). Representatives of Defendant Ng's "head office" would collect the attendance reports from the restaurant on a weekly basis for record-keeping and payroll purposes. (*Id.* at 95:21-25).

Nothing in the trial record reflects how much revenue Lan Garden generated or whether it transported any of its food products or supplies across state lines.[1]

### b. **Plaintiff Andy Chen[2]**

Plaintiff Chen began working at Lan Garden as a waiter in 2015, after answering a newspaper advertisement. (Tr. of May 16, 2023 Trial at 10:9-13:7, ECF No. 65). Defendant Ng hired Chen after an initial telephone conversation, during which the parties agreed that Lan Garden

---

[1] The only witness testimony on these subjects came from Plaintiff Andy Chen, who testified that he was unaware of how much money the restaurant earned each month or whether Defendant Chan purchased supplies for the restaurant and then transported them across state lines. (*Id.* at 41:20-43:4). Plaintiffs have not referred the Court to any other source of information relevant to these points.

[2] Upon careful consideration of his trial testimony, the Court finds that Mr. Chen was not a credible witness, and thus generally discredits his testimony. For instance, during the first day of trial, Mr. Chen testified that one of his payroll checks from Lan Garden– totaling "around 700" dollars – bounced in either November 2016 or December 2016. (*Id.* 39:15-19;40:2-4). He further testified that, while Defendant Chan then promised to pay him the amount of the bounced check in cash, she failed to do so. (*Id.* 40:9-25). He also testified that, while Chan requested that he return the bounced check to her, he could not recover it from his bank. (*Id.* at 40:7-19). When, on cross examination, Defendant Ng confronted Chen with a copy of the check ultimately received in evidence as Exhibit D1, Chen claimed that the document was a "second check" that Lan Garden issued as a replacement for the bounced check, and that Chen refused to accept it in fear of it bouncing as well. (*Id.* at 45:10-46:23). On the second day of trial, while on redirect examination, Mr. Chen testified: (1) the check entered into evidence as Exhibit D1 was, indeed, the original bounced check; and (2) Lan Garden did, in fact, pay him cash in lieu of issuing another check, (Tr. of Aug. 2, 2023 Trial at 11:21-13:1, ECF No. 66), in direct contravention of his earlier testimony. The Court therefore finds that Lan Garden fully paid Plaintiff Chen, in cash, for the funds previously at issue in the bounced check. The Court will highlight other credibility issues in footnotes 3 and 4.

3

would pay Chen a total of $3,500 per month (inclusive of both salary and tips).  (*Id.* at 13:3-16; 37:11-38:24).  Nowhere in Chen's testimony did he suggest that the flat rate of $3,500 per month was intended to cover only 40 hours of work per week.  Chen testified that he would work 6 days a week from approximately 9:45 a.m. to 9:30 p.m., (*id.* at 16:21-25), with a break for "meal time" each day. (*Id.* at 61:8-17).   Defendants' description of Plaintiff Chen's work schedule was slightly different.  Based on the representations of Defendant Ng, whom the Court found to be credible, and despite Plaintiff Chen's testimony to the contrary, the Court finds that Lan Garden employees had a break between 3:00 p.m. and 4:30 p.m. each day while the restaurant was closed. (*Id.* 62:19-63:9).[3]  Lan Garden's employee records indicate that Plaintiff Chen worked from 11:00 a.m. to 10:00 p.m. on each of his shifts for a total of 9.5 hours of work per shift (11 total hours minus the 1.5 hour break discussed herein).  (*Generally* Ex. D-3 at "Exhibit M").  Weighing the credibility of the parties, the Court finds that those records, based on attendance taken contemporaneously by Chen's supervisors and compiled on a weekly basis by Lan Garden's "head office", (Tr. of Aug. 2, 2023 Trial at 91:10-15; 95:21-25; 96:2-97:16, ECF No. 66), are more credible than Chen's general recollection.  The Court therefore finds that, for each day he worked at Lan Garden, Chen did so for a total of 9.5 hours.

     Defendant Ng also asked Chen to use a company-owned car to transport himself and other restaurant employees to and from work (from a central pick up/drop off location) on certain days, in exchange for an additional $10 per day (on top of his other pay). (*Id.* at 17:11-25; 19:3-20-12).

---

[3] Plaintiff Chen testified that he could not determine whether a photograph accurately depicted the kitchen at the Lan Garden restaurant because he worked as "so many different restaurants" over a 15-year period.  (*Id.* at 63:15-64:10).  This, in addition to the general credibility problems referenced in in footnotes 2 and 4, leads the Court to credit Defendant Ng's recollection of these events over Plaintiff Chen's.

Depending on traffic conditions, that drive took between 40 to 45 minutes in the morning and 35 to 40 minutes at night. (*Id.* at 18:12-23).

Chen testified that he worked for Lan Garden during two distinct time periods. In the first, he worked between "mid-March, April 2015" before leaving voluntarily to look after his children in mid-April 2015. (Tr. of Aug. 2, 2023 Trial at 5:7-6:6).[4] ECF No. 66). In the second, Chen testified, he worked at the restaurant between November 2016 through mid-January, 2017. (*Id.* at 6:12-17). The Court finds that Lan Garden's tip logs, which Plaintiff Chen admitted signing to confirm the tips he received each workday, (Tr. of May 16, 2023 Trial at 31:5-36:20, ECF No. 65; Exs. J1, J-1A, J-1B, J-1C, and J-1D), more accurately depict his work schedule. Those logs reflect, and the Court so finds: (1) that Plaintiff Chen actually started working at Lan Garden on April 17, 2015; (2) Chen worked for 8 days between April 17, 2015 and April 26, 2015; and (3) Chen next worked at Lan Garden (i.e., his "second" period of employment) beginning on October 10, 2016, and thereafter continued working at the restaurant semi-regularly through January 16, 2017. (*Generally* Exs. J1, J-1A, J-1B, J-1C, and J-1D). During both periods of Chen's employment, Lan Garden paid him twice a month, in a combination of cash and checks. (Tr. of May 16, 2023 Trial at 13:25-14:4; 39:12-15, ECF No. 65). Plaintiff Chen did not testify that Defendants failed to pay him in accordance with the parties' agreed rate of $3,500 per month, or the additional sum of $10 for each day he drove his coworkers to and from work.[5]

---

[4] On the first day of trial, Mr. Chen testified that he began working at Lan Garden in February 2015. (Tr. of May 16, 2023 Trial at 11:20-21, ECF No. 65). He changed that response to "mid-March, April 2015" on the second day of trial. (Tr. of Aug. 2, 2023 Trial at 5:7-6:6, ECF No. 66). The documentary evidence, including the tip logs that Plaintiffs acknowledged signing, (Tr. of May 16, 2023 Trial at 31:5-36:20, ECF No. 65), confirm that his employment began on April 17, 2015. (*See* Ex. J1 – April 2015 Tip Log).

[5] As described in footnote 2, while Chen initially testified regarding Defendants' alleged failure to compensate him for the bounced check admitted into evidence as Exhibit D-1, he later recanted

5

c. **Plaintiff Zhen Run Situ**

Plaintiff Situ testified that he began working at Lan Garden as a sauté chef in January 2015. (Tr. of Aug. 2, 2023 Trial at 30:4-31:1, ECF No. 66). Like Plaintiff Chen, Situ called Defendant Ng about the position after reading a newspaper ad. (*Id.* at 30:7-21). During that conversation, Situ and Ng agreed that Situ would work six days a week, from 10:30 a.m. to 11:00 p.m. in exchange for a flat monthly payment. (*Id.* at 31:2-23). While Situ originally testified that the parties agreed that he would be paid $3,800 per month, (*id.* at 31:5-6), he later admitted on cross-examination that the parties agreed he would be paid $3,500 a month. (*Id.* at 43:22-25; 46:11-13).[6] When asked on cross-examination about whether he ever calculated an hourly rate of pay based on that monthly figure, Mr. Situ testified that he had not, but clarified that whatever that hourly rate might be, it was "already predetermined when it was discussed with the boss." (*Id.* at 49:10-14). That is, he would be paid $3,500 per month in exchange for working the hours he and Mr. Ng had agreed upon. Mr. Situ further testified that those hours "would be calculated from when you open your door for business until you close for the day." (*Id.* at 61:2-3). He also explicitly acknowledged that the parties <u>never</u> agreed that the $3,500 figure was intended to cover just 40 hours of work per week. (*Id.* at 61:4-7). In total, Mr. Situ worked at Lan Garden from January

---

that statement on redirect examination and admitted that Lan Garden gave him the value of that check in cash. (Tr. of Aug. 2, 2023 Trial at 11:21-13:1, ECF No. 66)

[6] Given his admittedly hazy memories of his employment with Lan Garden, the Court finds that Plaintiff Situ was not a credible witness, and therefore generally discredits his testimony. On direct examination, Situ testified, without qualification, that the parties agreed Lan Garden would pay him $3,800 each month. (*Id.* at 31:4-6). He later confirmed that figure, testifying that Lan Garden paid him $1,900 twice a month. (*Id.* at 35:6-18). When pressed on cross-examination, however, Situ downgraded that amount to "anywhere between $3,500 and $3,800", (*id.* at 43:5-11), before repeatedly admitting that he could not remember because so much time had passed. (*Id.* at 43:21; 43:24-25; 44:10-11; 46:14-15). As he was unable to remember such an important, macro-level detail as his monthly pay, the Court has little confidence in Mr. Situ's recollection of the more minor details of his work at Lan Garden.

2015 through September 2015. (*Id.* at 63:6-11). He was paid in a combination of checks and cash. (*Id.* at 65:2-16).

Like Plaintiff Chen, Plaintiff Situ also took advantage of the carpooling option that Lan Garden arranged when commuting to work. (*Id.* at 32:1-33:10). While he was a passenger on most days, he also drove the company vehicle two days per week when the primary driver was off. (*Id.* at 33:11-22). Lan Garden paid Situ an additional $10 per day for each day he drove himself and his colleagues to and from work. (*Id.* at 33:23-34:24).

As was the case with Plaintiff Chen, Lan Garden also kept records of Plaintiff Situ's work attendance. Those records were based on attendance taken contemporaneously by Situ's supervisors and compiled on a weekly basis by Lan Garden's "head office". (Tr. of Aug. 2, 2023 Trial at 91:10-15; 95:21-25; 96:2-97:16, ECF No. 66). Given Mr. Situ's difficulty in recalling the details of his work at Lan Garden, the Court finds that those records provide a more credible source of Mr. Situ's work schedule and attendance than Situ's memory. The records reflect, and the Court finds, that Mr. Situ worked the same hours as Mr. Chen (11:00 a.m. to 10:00 p.m. with a 1.5 hour break on each of his shifts, for a total of 9.5 hours of work per shift). (*Generally* Exhibit D-3 at "Exhibit E"). In turn, the Court finds that, for each day he worked at Lan Garden, Plaintiff Situ did so for a total of 9.5 hours.

### III. CONCLUSIONS OF LAW

#### a. FLSA Claims (Counts I and V)

Both plaintiffs seek relief under the FLSA for Defendants' alleged failure to pay appropriate overtime wages. (Count I). Plaintiff Chen also asserts an FLSA claim for Defendants' alleged failure to pay him the statutorily mandated minimum wage. Plaintiffs have not included any argument or conclusions of law regarding their FLSA claims in their post-trial submissions and

7

have ostensibly abandoned those claims. The Court will nevertheless examine them in an abundance of caution.

The FLSA's "overtime" provision – 29 U.S.C. § 207—and "minimum wage" provision—29 U.S.C. § 206—contain the same limiting language: they apply only to an employee who is "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." (*Compare* 29 U.S.C. § 206(a) *with* 29 U.S.C. § 207(a)). The FLSA, in turn, defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). In short, "commerce" means interstate commerce. To be an "enterprise engaged in commerce or in the production of goods for commerce", the FLSA requires, in relevant part, that an entity (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) does not less than $500,000 in business annually. 29 U.S.C. §203(s)(1).

Here, Plaintiffs have not made any effort to establish that the FLSA applies to their claims. Indeed, Plaintiffs' post-trial submissions are dedicated entirely to their NJWHL claims, and only mention the FLSA to argue that, even if the federal statute does not apply, the Court should nevertheless exercise supplemental jurisdiction over Plaintiffs' state law claims. (Pls. Proposed Conclusions of Law at 4, ECF No. 68). Plaintiffs themselves therefore appear to acknowledge that their FLSA claims lack an evidentiary basis. As noted in Section II(a), above, Plaintiffs did not present any evidence on this issue at trial. Defendants are therefore entitled to judgment on Plaintiffs' FLSA claims.

### b. Plaintiff Chen's Claim for Unpaid Wages (Count III)

In Count III of the Complaint, Plaintiff Andy Chen alleged that Defendants violated the NJWHL by failing to pay him "for all hours he worked in for [sic] the period from November 15, 2016 to November 30, 2016." (Compl. ¶66, ECF No. 1). While Plaintiffs did not address this claim in their post-trial submissions, neither have they explicitly withdrawn it. In this cause of action, Plaintiff Chen appears to seek relief regarding the "bounced check", dated November 30, 2016, that the Court admitted into evidence as Exhibit D-1. As discussed in Section II(b), above, however, Chen testified, and this Court has found, that Defendant Lan Garden paid Chen in cash for the value of that check. (*See* Fn. 3 herein). Defendants are therefore entitled to judgment in their favor as to Count III.

### c. Plaintiffs' Claims Under the NJWHL

The Court next examines Plaintiffs' claims under the NJWHL. Both Plaintiffs alleged that Defendants violated that statute by failing to pay them appropriate overtime wages. (Count II). Plaintiff Chen also alleged that Defendants failed to pay him the minimum wage required under New Jersey law. The Court addresses these points in turn.

Plaintiffs contend that Defendants failed to properly compensate them for all "overtime" hours worked, as required under the NJWHL. For the purposes of this analysis, the Court will assume that all Defendants constitute Plaintiffs' "employers" under that statute. Plaintiffs' claims are premised on the presumption that their monthly salary was intended to cover just forty-hours per week, and that any additional hours would be compensated separately at the statutory "time-and-a-half" rate. (Pls. Conclusions of Law at 7-11, ECF No. 68). As courts have recognized when examining overtime claims under the FLSA, however, "the 'number of hours which the salary is intended to compensate' does not have to be 40 hours; instead, this is a number that is determined

9

by the parties' actual practice." Sharpe v. Cureton, 319 F.3d 259, 271 (6th Cir. 2003) (citation omitted). In turn, Courts have found that "[a]lthough there is a rebuttable presumption that an employee's weekly salary covers 40 hours per week, 'the employer can rebut the presumption by showing an employer-employee agreement that the salary cover[s] a different number of hours.'" *Ou, et al. v. Lan Garden Restaurant and Bar, et al.*, No. 16-cv-4429 (LDW), ECF No. 100 at 6 (Aug. 8, 2019) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002)). The Court finds that this method is appropriate given the circumstances of this case. Indeed, another Judge in this District, the Hon. Leda D. Wettre, U.S.M.J., previously applied it when considering the unpaid overtime claims (under both the FLSA and NJWHL) of another Lan Garden employee to whom the restaurant paid a flat monthly salary. *Id.* at 6-7. While Magistrate Judge Wettre's decision is not binding in this case, the Court finds it persuasive.

As discussed in Section II above, the record reflects that both Plaintiffs agreed to work in their respective positions during Lan Garden's operating hours, in exchange for a flat monthly salary of $3,500. Neither Plaintiff testified that he understood that his salary was intended to cover a 40-hour workweek. Rather, both Plaintiffs acknowledged having agreed to work schedules that would put their weekly hours well above that threshold. Against this backdrop, and after carefully considering the parties' testimony and the relevant evidentiary record, the Court finds that both Plaintiffs reached an agreement with Defendants that their salaries ($3,500 per month or $875 per week) were intended to compensate them for the 57 hours per week that they would work at Lan Garden. In turn, the Court also finds that the parties necessarily contemplated that Plaintiffs' wages included an overtime premium. The parties also separately agreed that Plaintiffs would be paid $10 per day for each day they used a company vehicle to drive themselves and coworkers to and from Lan Garden. As neither Plaintiff claims that Defendants failed to pay the flat $3,500 per

10

month salary they promised, or any compensation related to driving the carpool vehicle, the Court finds that Plaintiffs have received all wages to which they are entitled under the law and that Defendants are not liable to any additional overtime compensation. Defendants are therefore entitled to judgment on Count II of Plaintiffs' Complaint.

Turning to Plaintiff Chen's minimum wage claim, the Court notes that Chen did not present any arguments, findings of fact, or conclusions of law on this point in his post-trial submissions. Nor did he present any testimony or documentary evidence relevant to this point at trial. The Court finds that Chen has therefore abandoned it and that Defendants are also entitled to judgment on Count IV.

### d. Default Judgment as to Defendant Lan Garden

Finally, the Court must address Plaintiffs' request that the Court enter a default judgment against Defendant Lan Garden pursuant to Federal Rule of Civil Procedure 55(b). This case presents an atypical situation. While the Clerk of the Court entered default against Lan Garden on January 31, 2019, Plaintiffs did not seek leave to file a motion for default judgment against that entity at any time over the next several years leading up to trial. Instead, they first requested that relief in their post-trial submissions, after the parties had presented their respective proofs at trial and developed a full evidentiary record on Plaintiffs' claims.

The decision of whether to enter a default judgment falls within the Court's discretion. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) ("The District Court's refusal to enter a default judgment is subject to review under the abuse of discretion standard."); *Great Lakes Ins. SE v. Ross*, 652 F. Supp. 3d 472, 477 (D.N.J. 2023) (noting that, assuming certain procedural hurdles have been cleared, "'it is within the discretion of the district court whether to grant a motion for a default judgment.'"). "Three factors control whether a default judgment should be granted:

(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984)).  Having carefully considered these factors under the circumstances of this case, the Court finds that a default judgment against Lan Garden would be inappropriate.

First, Plaintiffs have not established that Lan Garden's default caused them any legitimate prejudice.  While they argue, without elaboration, that the entity's "failure to file any responsive pleadings or otherwise appear in this matter had left Plaintiffs without a recourse regarding Plaintiffs' claims" (Pls. Proposed Conclusions of Law at 2, ECF No. 68), the Court disagrees.  Plaintiffs have had the opportunity to engage in discovery and otherwise investigate their claims through Lan Garden's principals, the individual defendants John Ng and Michelle Chan.  Plaintiffs have not articulated how they might have developed their case differently had Lan Garden itself participated in this action through counsel and corporate representatives.  Far from claiming that they were deprived of necessary information, Plaintiffs argue that the Court should enter judgment in their favor, based on the strength of the evidence they presented at trial.  (*Generally id.*).

Having already determined, following trial and a careful consideration of the evidence of record, that each of Plaintiffs' claims fail for one reason or another, the Court finds that the "litigable defense" factor weighs overwhelmingly against the entry of a default judgment.

For the sake of completeness, the Court will also address the third factor:  whether Lan Garden's "delay [in participating in the case] is due to culpable conduct." *Chamberlain*, 210 F.3d at 164.  Here, the record reflects that Lan Garden itself defaulted when its prior attorney withdrew from the case and, the Court understands, the entity was unable to afford replacement counsel.  Lan Garden's default was therefore not based on a "delay" and, as noted above, Plaintiffs have

been able to pursue and obtain corporate records in discovery from the entity's principals, Defendants Ng and Chan.

For these reasons, Court declines to enter default judgment against Defendant Lan Garden. Rather, in light of the evidence of record, and for the reasons discussed above regarding Defendants Ng and Chan, the Court will enter judgment in Lan Garden's favor on each of Plaintiffs' claims.

## IV.   CONCLUSION

Based on the foregoing, the Court finds that Defendants are entitled to judgment on each of Plaintiffs' claims. In accordance with Federal Rule of Civil Procedure 58(a), the Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.

**s/ Cathy L. Waldor**
**Hon. Cathy L. Waldor, U.S.M.J.**